# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | : | Chapter 15 |
|  | : |  |
| MS "FRITZ" SCHIFFAHRTSGES | : | Case No. <u>14-33183</u> |
| MBH & CO. REEDEREI KG, | : |  |
|  | : |  |
| Debtor in a Foreign Proceeding. | : |  |

## FOREIGN REPRESENTATIVES' VERIFIED PETITION UNDER CHAPTER 15 FOR RECOGNITION OF FOREIGN MAIN PROCEEDING AND MOTION FOR RELATED RELIEF

Petitioner, Andreas Sontopski ("**Petitioner**"), in his capacity as the Insolvency

Administrator of the insolvency estate of MS "Fritz" Schiffahrtsges mbH & Co. Reederei KG, a

*kommanditgesellschaft* (limited partnership) formed under the laws of Germany ("**MS Fritz**"),

and declared as authorized to act by orders dated June 26, 2014 and August 13, 2014 (the

"**Appointment Orders**") of the Meppen District Insolvency Court in Germany (the "**German

Court**"),[1] in Case File No. 9 IN 116/14 (the "**German Insolvency Proceeding**"), to administer

the reorganization or liquidation of MS Fritz's assets and affairs, hereby submits this verified

petition in furtherance of the Form of Voluntary Petition filed concurrently herewith (together

herewith, the "**Petition**") for entry of an order (i) recognizing the German Insolvency

Proceedings as a foreign main proceeding pursuant to sections 1515 and 1517 of title 11 of the

United States Code (the **"Bankruptcy Code"**),[2] (ii) granting related relief pursuant to section

1520 of the Bankruptcy Code, and (iii) granting further permanent relief pursuant to sections

105(a), 1507(a), 1509(b)(2)-(3), 1521(a) and 1525(a) of the Bankruptcy Code.  In support of the

Petition, the Petitioner has filed concurrently herewith and incorporated herein by reference (a)

---

[1] This court is referred to as the "Meppen Local Insolvency Court" in the translated orders.
[2] Except as otherwise indicated, section and chapter references are to the Bankruptcy Code.

14-33183-maw   Doc 2   FILED 08/28/14   ENTERED 08/28/14 15:53:10   Page 1 of 35

the Declaration of Andreas Sontopski pursuant to 28 U.S.C. § 1746 (the "**Sontopski Declaration**"),[3] and respectfully represents as follows:

## I.    PRELIMINARY STATEMENT

1.      As will be explained in detail below, Chapter 15 proceedings were designed to ensure that the administrators of foreign bankruptcies can take control of the debtor's assets and distribute them in an orderly and fair manner to all creditors, rather than allowing individual creditors to seize assets in the United States and receive more than their fair share.

2.      MS Fritz's sole asset is a bulk carrier, maritime vessel (i.e., a freighter ship) known as M/V Fritz.  M/V Fritz is currently located in the port of Toledo, OH.

3.      On June 26, 2014, the German Court issued the first of the Appointment Orders in the German Insolvency Proceedings, which, among other things, appointed the Petitioner to operate MS Fritz's business as temporary Insolvency Administrator, prohibited MS Fritz from transferring, disposing of, or encumbering any assets without the Petitioner's consent, and barred "any seizure of . . . the maritime vessel 'MS Fritz'" and any other "[c]ompulsory enforcement measures."

4.      Upon information and belief, a single family—the Schöning family—owns and controls Intersee Schiffahrtsgesellschaft mbH & Co KG ("**Intersee**") and Intership Maritime Crew Management GmbH ("**Intership**").  The Schöning family also owns MS Fritz and, prior to the German Insolvency Proceedings, controlled the company.  Given this relationship, German insolvency law treats the claims of Intersee and Intership as effectively shareholder claims.  Under § 39 Section 1 No. 5 of the *Insolvenzordnung* ("**InsO**"), the German insolvency law, the claim of a shareholder is subordinated to all other claims.  Moreover, under InsO § 88, neither a

---

[3] True and correct copies of the Appointment Orders are attached to the Sontopski Declaration as Exhibit A.

shareholder nor any other creditor can obtain individual securities through enforcement after the company has filed for insolvency.

5.     On July 4, 2014, about two weeks *after* the entry of the first Appointment Order, Intersee and Intership assigned certain claims to Pacific Chartering Services Inc. ("**Pacific Chartering**"). Petitioner intends to investigate the circumstances of the assignment to Pacific Chartering, and the nature and validity of its claim.

6.     Although the contracts underlying the Intersee and Intership claims provide for mandatory German arbitration, on July 16, 2014, Pacific Chartering commenced an admiralty proceeding against MS Fritz in the United States District Court for the Northern District of Ohio ("**District Court**"), Case No. 3:14CV1576, based upon the Intersee and Intership claims (the "**Admiralty Proceeding**").[4]   Pacific Chartering obtained an Order for Issuance of Process of Maritime Attachment and Garnishment and a Process of Maritime Attachment and Garnishment against M/V Fritz (together, the "**Attachment Orders**").

7.     Pacific Chartering did not provide Petitioner with prior notice of its action to obtain the Attachment Orders.  Nor did Pacific Chartering at any time inform the District Court of the German Insolvency Proceeding or the fact that the contracts underlying the Intersee and Intership claims provide for mandatory German arbitration.  See Sontopski Decl. at ¶ 29.

8.     On August 13, 2014, the German Court issued the second Appointment Order, which, among other things, appointed the petitioner as permanent Insolvency Administrator, authorized the petitioner to dispose of MS Fritz's property, and directed creditors to file claims and notify the Petitioner of any alleged secured claims.  See Sontopksi Decl. Ex. A, pp. 1 – 4.

---

[4] True and correct copies of the English versions of the Intersee and Intership contracts which Pacific Chartering filed with the District Court are attached as **Exhibits A and B**, respectively.  The mandatory arbitration provision in the Chartering and Trusted Broker Agreement between Intersee and MS Fritz is contained in § 11, and a similar provision is in ¶ 14 of the Crew Hiring Contract between Intership and MS Fritz.

3

9.      Petitioner seeks relief under Chapter 15 of the Bankruptcy Code in order to obtain

the benefit and protection of the automatic stay with respect to the M/V Fritz, to prevent

dissident creditors from bypassing the German Insolvency Proceeding by commencing litigation

or executing against the M/V Fritz in the United States to obtain a greater recovery than similarly

situated – or higher priority – creditors,  and to permit Petitioner to administer an orderly

liquidation for the benefit of MS Fritz's estate and all of its creditors, in the appropriate order of

their priority.

## II.      RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

10.      MS Fritz was formed in Germany on October 16, 2009. See Sontopski Decl. at ¶

14.  As indicated on its commercial registration no. HRA 200365 with the Commercial Registrar

of the District Court in Osnabrück in Germany, MS Fritz's registered office is at Boschstr. 15, D-

49733 Haren, in Germany. See Sontopski Decl. at ¶ 15.

11.      The M/V Fritz is a Steel Bulk Carrier, IMO No. 941 51 55 registered with the Sea

Vessel Registra at the District Court ("Amtsgericht") of Emden, Registra No. SSR 5929. The

vessel was built in 2009 by the Wuhu Xinlian Shipbuilding Co. Ltd. in China. Its port of registry

(home port) is Haren/Ems in Germany.  The vessel was bought by the MS Fritz in 2010. The

vessel's purchase was financed through Norddeutch Landesbank in Hannover, Germany. That

loan currently amounts to 16,445.195.33 Euros. See Sontopski Decl. at ¶ 23

12.      Verwaltung MS "Fritz" GmbH ("**General Partner**") is the general partner of MS

Fritz and is insolvent. See Sontopski Decl. at ¶ 18.  The limited partners of MS Fritz are Traude,

Maik, Mark and Josef Schöning. Traude, Maik, and Josef Schöning own General Partner. See

Sontopski Decl. at ¶¶ 17 - 19.

4

13. Maik and Josef Schöning are the co-CEOS of General Partner, and so managed the affairs of MS Fritz. Maik and Josef Schöning are German citizens who managed MS Fritz and General Partner from Haren, Germany. <u>See</u> <u>Sontopski Decl.</u> at ¶ 20.

14. MS Fritz owns no assets other than the M/V Fritz, and its only business activities are in connection with the maintenance and operation of M/V Fritz as a maritime freighter. <u>See</u> <u>Sontopski Decl.</u> at ¶ 21.

15. The Petitioner is an attorney licensed to practice law in Germany. He studied law at the University of Münster in Germany after he finished training as a banker with Trustee Savings Bank in Meppen. The Petitioner received his law degree in 1999, and, in 2003, received a degree as a Specialized Insolvency Lawyer ("Fachanwalt für Insolvenzrecht"). <u>See</u> <u>Sontopski Decl.</u> at ¶ 4.

16. To be eligible to serve as an insolvency administrator in Germany, a lawyer must apply for recognition by the German District Court. Under Section 56 of the *Insolvenzordnung*, the German Insolvency Code ("**InsO**"), the District Court must verify the applicant's personal and professional skills before recognizing the applicant as an Insolvency Administrator. The Petitioner was first appointed as an Insolvency Administrator in 2002, and has been appointed as an Insolvency Administrator in over 1,000 insolvency cases by the relevant courts in Münster, Meppen, Vechta, Nordhorn, Bersenbrück, Osnabrück, Leer, Lingen and Bremen. The Petitioner was the first insolvency administrator ever appointed in Germany to handle the insolvency of a merchant vessel, and has acted as the insolvency administrator in over 15 cases involving merchant vessels. <u>See</u> <u>Sontopski Decl.</u> at ¶ 5.

## II.     <u>JURISDICTION AND VENUE</u>

17.     This Court has jurisdiction over this case ancillary to a foreign proceeding pursuant to 28 U.S.C. §§1334(b) and 157(b)(2)(P).

18.     This case has been properly commenced pursuant to section 1504 of the Bankruptcy Code by the filing of the Petition for recognition of the German Insolvency Proceeding under section 1515 of the Bankruptcy Code.

19.     Venue is proper in this district.  Section 1410 of title 28 of the United States Code provides as follows:

> A case under chapter 15 of title 11 may be commenced in the district court of the United States for the district –
>
> (1)     in which the debtor has its principal place of business or principal assets in the United States;
>
> (2)     if the debtor does not have a place of business or assets in the United States, in which there is pending against the debtor an action or proceeding in a Federal or State court; or
>
> (3)      in a case other than those specified in paragraph (1) or (2), in which venue will be consistent with the interests of justice and the convenience of the parties, having regard to the relief sought by the foreign representative.

20.     Venue is appropriate in this Court pursuant to 28 U.S.C. §§1410(1) and (2) because MS Fritz does not have a place of business in the United States, MS Fritz's sole asset – the M/V Fritz - is located in this District,[5] and there is pending against it one or more actions or proceedings in the federal courts located within this District.

### III.     RELIEF REQUESTED

21.     The Petitioner requests that this Court enter an order, substantially in the form of the proposed order attached hereto as Exhibit D, that, pursuant to sections 105(a), 1507(a),1509(b)(2)-(3), 1515, 1517, 1520, 1521(a) and 1525(a) of the Bankruptcy Code:

---

[5] For the same reason, MS Fritz also qualifies as a debtor under 11 U.S.C. § 109(a), to the extent that it applies.

6

(a) recognizes the German Insolvency Proceeding as a foreign main proceeding (as defined in section 1502 of the Bankruptcy Code) and grants MS Fritz all of the relief afforded to foreign main proceedings pursuant to section 1520 of the Bankruptcy Code;

(b) recognizes the Petitioner as a "foreign representative" as defined in section 101(24) of the Bankruptcy Code in respect of the German Insolvency Proceeding;

(c) grants the Petitioner authority to examine witnesses, take evidence, and deliver information concerning MS Fritz and its business, and entrusts the administration of any and all of MS Fritz's assets within the territorial jurisdiction of the United States to the Petitioner;

(d) provides that the Appointment Orders and all other orders of the German Court, and all acts of Petitioner in his capacity as Administrator in the German Insolvency Proceeding, are recognized, granted comity, entitled to full force and effect against all entities (as that term is defined in section 101(15) of the Bankruptcy Code) in accordance with their terms, and that such terms shall be binding and fully enforceable on all entities (as that term is defined in section 101(15) of the Bankruptcy Code) subject to the U.S. Bankruptcy Court's jurisdiction who receive notice thereof, whether or not they agreed to be bound or participated in the German Insolvency Proceeding;

(e) provides that any judgment, wherever and whenever obtained, to the extent such judgment is a determination of the personal liability of MS Fritz with respect to any debt subject to and/or administered in the German Insolvency Proceeding or as a result of German law relating to the German Insolvency Proceeding, as applicable, is unenforceable except through the German Insolvency Proceeding;

(f) permanently enjoins all entities (as that term is defined in section 101(15) of the Bankruptcy Code) subject to the U.S. Bankruptcy Court's jurisdiction from commencing or continuing, in any manner, directly or indirectly, including by way of counterclaim, any action, suit or other proceeding (including, without limitation, arbitration, mediation or any judicial, quasi-judicial, or administrative action, proceeding or process whatever in any judicial, arbitral, administrative or other forum), employing any process, or performing any act to collect, recover or offset within the territorial jurisdiction of the United States any debt cancelled, discharged, avoided, recharacterized as equity, or restructured in the German Insolvency Proceeding and/or as a result of German law relating to the German Insolvency Proceeding, as applicable, or seeking any discovery related thereto;

(g) permanently enjoins any party from commencing or continuing any action (including, without limitation, arbitration, mediation or any judicial, quasi-judicial, or administrative action or proceeding or process whatever in any judicial, arbitral, administrative or other forum), including by way of counterclaim, employing any process, or performing any act, to collect, recover or offset any debt cancelled, discharged, avoided, recharacterized or restructured in the German Insolvency Proceeding and/or as a result of German law relating to the German Insolvency Proceeding, as applicable, against property of MS Fritz

7

within the territorial jurisdiction of the United States, including (i) enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judicial, quasi-judicial or administrative judgment, award, determination, decree, assessment, garnishment or order, against MS Fritz or its property, or any direct or indirect transferee of or successor to any property of MS Fritz, or any property of such transferee or successor, or (ii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any lien or encumbrance of any kind against such property;

(h) permanently enjoins all entities (as that term is defined in section 101(15) of the Bankruptcy Code) subject to the U.S. Bankruptcy Court's jurisdiction from (i) transferring, relinquishing or disposing of any property of MS Fritz located within the territorial jurisdiction of the United States, or (ii) taking or continuing any act to obtain possession of, commingle, or exercise control over, such property, to the extent any such act under (i) or (ii) is inconsistent with the German Insolvency Proceeding and German law relating to the German Insolvency Proceeding, as applicable;

(i) permanently enjoins the commencement of any suit, action or proceeding in the territorial jurisdiction of the United States to settle any dispute which arises out of any provision of the German Insolvency Proceeding and German law relating to the German Insolvency Proceeding, as applicable;

(j) permanently enjoins all entities (as that term is defined in section 101(15) of the Bankruptcy Code) subject to the U.S. Bankruptcy Court's jurisdiction from taking any action inconsistent with the German Insolvency Proceeding, including, without limitation, against MS Fritz or against any property of MS Fritz within the territorial jurisdiction of the United States;

(k) permanently enjoins all entities (as that term is defined in section 101(15) of the Bankruptcy Code) subject to the U.S. Bankruptcy Court's jurisdiction from commencing or continuing in any manner, directly or indirectly, including by way of counterclaim, any action, suit or other proceeding (including, without limitation, arbitration, mediation or any judicial, quasi-judicial, or administrative action, proceeding or process whatever in any judicial, arbitral, administrative or other forum), or employing any process, against the Foreign Representative (personally or in such capacity), MS Fritz, or any of its respective successors, assigns, agents, representatives, advisors or attorneys (collectively, the "Debtor Parties") or any of them in respect of any claim or cause of action, in law or in equity, arising out of or relating to any action taken or omitted to be taken by any of the Debtor Parties in connection with this chapter 15 case or in preparing, disseminating, applying for or implementing the German Insolvency Proceeding;

(l) provides that no action taken by the Petitioner in preparing, disseminating, applying for, implementing or otherwise acting in furtherance of the German Insolvency Proceeding, any order entered in respect of this Petition, the chapter 15 case, any further order for additional relief in the chapter 15 case, or any adversary proceedings or contested matters in connection therewith, will be deemed to constitute a waiver of any

immunity afforded the Petitioner as Foreign Representative, including without limitation pursuant to section 1510 of the Bankruptcy Code;

(m) provides that for the avoidance of doubt, nothing in the Order shall impair the rights of any entity granted under the German Insolvency Proceeding, having regard in particular to the exclusive right of the Courts of Germany to hear and determine any suit, action or proceeding and to settle any dispute which may arise out of the German Insolvency Proceeding, or out of any action taken or omitted to be taken under the German Insolvency Proceeding or in connection with the administration of the German Insolvency Proceeding;

(n) provides that this Court shall retain jurisdiction with respect to the effect, enforcement, amendment or modification of such order; and

(o) provides such other and further relief as the Court deems proper and just (together, the "Relief Requested").

## IV.    BASES FOR RELIEF REQUESTED

22.      Chapter 15 of Title 11 of the Bankruptcy Code governs cross-border insolvency situations and, among other purposes, was designed to permit a foreign representative to come into court in the United States and have a foreign insolvency proceeding recognized in this country. 11 U.S.C. 1501(b)(1).

23.      As explained recently by the Third Circuit:

> [T]he emphasis must be on ensuring that the insolvency administrator, appointed in [the foreign] proceeding, is accorded every possible assistance to take control of all assets of the debtor that are located in other jurisdictions. Chapter 15 creates an ancillary proceeding in the United States to provide support to the foreign insolvency administrator. The goal is to direct creditors and assets to the foreign main proceeding for orderly and fair distribution of assets, avoiding the seizures of assets by creditors operating outside the jurisdiction of the foreign main proceeding.[6]

24.      To implement these goals, Chapter 15 provides that recognition of the foreign proceeding, among other things, triggers a stay of the commencement or continuation of

---

[6] In re ABC Learning Centers, Ltd., 728 F.3d 301, 2013 U.S. App. LEXIS 17844, at *9 (3d Cir. Aug. 27, 2013) (internal quotation marks and citations omitted).

litigation, judgment enforcement, lien-related activity, and other proceedings against the debtor, while the debtor's bankruptcy is being administered in the foreign proceeding. 11 U.S.C. §1520.

26.    Bankruptcy Code section 1504 provides that "[a] case under this chapter is commenced by the filing of a petition for recognition of a foreign proceeding under section 1515."

26.    Bankruptcy Code section 1515[7] sets forth the procedural requirements for filing a petition for recognition of a foreign proceeding. Bankruptcy Code section 1516[8] sets forth presumptions this Court is entitled to make in connection with such a petition. Together, sections 1515 and 1516 of the Bankruptcy Code establish that the only proof necessary in order for the Court to grant the petition for recognition is that the petitioning foreign representative is a duly approved foreign representative in a foreign proceeding. This fact may be established by certificates from the foreign court or certified copies of its decision. In addition, this Court may presume that these documents are genuine and that the foreign court's decision or certificate is factually correct.

---

[7] **11 U.S.C. §1515. Application for recognition**
    (a) A foreign representative applies to the court for recognition of a foreign proceeding in which the foreign representative has been appointed by filing a petition for recognition.
    (b) A petition for recognition shall be accompanied by –
        (1) a certified copy of the decision commencing such foreign proceeding and appointing the foreign representative;
        (2) a certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representative; or
        (3) in the absence of evidence referred to in paragraphs (1) and (2), any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative.
    (c) A petition for recognition shall also be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative.
    (d) The documents referred to in paragraphs (1) and (2) of subsection (b) shall be translated into English. The court may require a translation into English of additional documents.

[8] **11 U.S.C. §1516. Presumptions concerning recognition**
    (a)  If the decisions or certificate referred to in section 1515(b) indicates that the foreign proceeding is a foreign proceeding and that the person or body is a foreign representative, the court is entitled to so presume.
    (b)  The court is entitled to presume that documents submitted in support of the petition for recognition are authentic, whether or not they have been legalized.
    (c)  In the absence of evidence to the contrary, the debtor's registered office, or habitual residence in the case of an individual, is presumed to be the center of the debtor's main interests.

**A.** **Recognition of the German Insolvency Proceeding as a Foreign Main
Proceeding and of the Petitioner as its Foreign Representative is Appropriate**

27.    Section 1517(a) of the Bankruptcy Code provides that, after notice and a hearing,

the Court shall enter an order recognizing a foreign proceeding as a foreign main proceeding if

(1) such foreign proceeding is a foreign main proceeding within the meaning of section 1502 of

the Bankruptcy Code, (2) the foreign representative applying for recognition is a person or body

and (3) the petition meets the requirements of section 1515 of the Bankruptcy Code. In re

Overnight & Control Comm'n of Avánzit, S.A., 385 B.R. 525, 532 (Bankr. S.D.N.Y. 2008). As

explained below, the German Insolvency Proceeding, the Petitioner and this Petition satisfy all of

the foregoing requirements.

(i) The German Insolvency Proceeding is a Foreign Main Proceeding

28.    As an initial matter, the German Insolvency Proceeding comes within the general

definition of "foreign proceeding" set forth in section 101(23) of the Bankruptcy Code.[9] Section

101(23) requires that a "foreign proceeding" (1) be a collective judicial or administrative

proceeding relating to insolvency or adjustment of debt, (2) pending in a foreign country, (3)

under the supervision of a foreign court and (4) for the purpose of reorganizing or liquidating the

assets and affairs of the debtor. See 11 U.S.C. § 101(23). The statute defines "foreign court" as

"a judicial or other authority competent to control or supervise a foreign proceeding." See 11

U.S.C. § 1502(3).

29.    There should be little doubt that the German Insolvency Proceeding qualifies as a

"foreign proceeding" under section 101(23).  In re Toft, 453 B.R. 186, 189 (Bankr. S.D.N.Y.

---

[9] Section 101(23) of the Bankruptcy Code provides:
    The term "foreign proceeding" means a collective judicial or administrative proceeding in a foreign
    country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which
    proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for
    the purpose of reorganization or liquidation.
11 U.S.C. § 101(23).

2011) ("There is no question that German . . . insolvency proceedings are ordinarily entitled to recognition in this country").  Section 1516(a) of the Bankruptcy Code entitles this Court to presume that a foreign proceeding is a "foreign proceeding," if the decision commencing the foreign proceeding so indicates.  See 11 U.S.C. §§ 1516(a), 1515(b)(1).  Here, the German Court has recognized in the Appointment Orders that the proceeding is a "European Main Insolvency Proceeding" and that Petitioner "is appointed as Insolvency Administrator" and "the power of disposition [of the insolvency assets] is transferred to the Insolvency Administrator."  Sontopski Decl. Ex. B at 1.

30.     Further, Section 1 of the German insolvency law, the InsO, provides that the statute is intended to collectively satisfy the debtor's creditors by liquidating assets and distributing the proceeds or by reaching an arrangement through an insolvency plan that maintains the business enterprise.  See Sontopski Decl. at ¶ 33.

31.     Under the InsO, an insolvency administrator, like the Petitioner, stands in a position analogous to an American bankruptcy trustee.  Creditors of the insolvent company are generally barred from executing against the assets of the debtor.  See, e.g., section 89.  Instead, the creditors must file claims with an administrator who is appointed and supervised by a court, vested with the rights to manage the debtor's assets, bring claims for generalized harm to the estate, and take control of certain lawsuits related to the debtor.  See, e.g., sections 28, 56, 58, 80, 85, 86, 92, 148 and 174.  The administrator may maximize the value of the fund he creates by declining to perform executory contracts, terminating leases, and avoiding transactions that disadvantage creditors.  See, e.g., sections 103, 109, 130-146.  The administrator has a duty to determine the debtor's assets and creditors, and to assist with brokering a plan to rehabilitate the

debtor or to liquidate and distribute assets to creditors in order of their priority after negotiations with a creditor's committee.  See, e.g., Secs. 152, 153, 187-196.  See Sontopski Decl. at ¶ 34.

32.     The German Insolvency Proceeding is "collective" in the sense that it directly involves all creditors and persons with liabilities to the debtor and pays them shares of the estate based upon a plan or their priorities.  The German Insolvency Proceeding is intended to directly or indirectly benefit all creditors collectively, rather than to benefit any single creditor alone. See Sontopski Decl. at ¶ 35.

33.     The German Insolvency Proceeding is a judicial proceeding in that it required the Appointment Orders to commence and will be administered by Petitioner under the supervision of the German Court, a judicial body of Germany, which, under German law, will have exclusive jurisdiction to hear and determine any suit, action or proceeding and to settle any dispute that may arise out of the German Insolvency Proceeding. See Sontopski Decl. at ¶ 36.

34.     Moreover, the German Insolvency Proceeding otherwise fits the statutory definition. It is pending before the German Court (a foreign court) under applicable German insolvency law; MS Fritz's assets and affairs are subject to the control of the Insolvency Administrator (Petitioner), who was appointed and is supervised by the German Court. There can thus be no question that the German Insolvency Proceeding is a "foreign proceeding" within the meaning of 11 U.S.C. §1517(a).

35.     Insolvency proceedings under German law have routinely been recognized as foreign proceedings in proceedings under chapter 15 and chapter 15's predecessor, section 304. Jaffe v. Samsung Electronics Co., Ltd., 737 F.3d 14, 17-18 (4th Cir. 2013) (noting that bankruptcy court recognized German insolvency administrator as representing a foreign main proceeding and affirming grant of comity with a "carve-out" for patent issues); Toft, 453 B.R. at

13

189 (finding that German insolvency proceedings should generally be recognized, but denying the request to permit interception of communications that would be illegal under American law). Cf. In re Petition of Gross, 278 B.R. 557, 561 (Bankr. M.D. Fla. 2002) (finding that German insolvency proceeding is a foreign proceeding under predecessor provisions); In re A. Tarricone, Inc., 80 B.R. 21 (Bankr. S.D.N.Y. 1987) (finding West German bankruptcy proceeding to be a "foreign proceeding" under predecessor provisions); In re Metzeler, 78 B.R. 674 (Bankr. S.D.N.Y. 1987) (granting recognition to West German bankruptcy proceedings under predecessor provisions).

36.     In addition to qualifying as a "foreign proceeding" under section 101(23), the German Insolvency Proceeding qualifies as a "foreign main proceeding," which is defined in the Bankruptcy Code as "a foreign proceeding pending in the country where the debtor has the center of its main interests." See 11 U.S.C. § 1502(4); see also 11 U.S.C. § 1517(b)(1) (providing that an order of recognition as a foreign main proceeding shall be entered if the foreign proceeding that is subject to the petition "is pending in the country where the debtor has the center of its main interests").

37.     The Bankruptcy Code neither defines nor provides a conclusive test for determining the location of a debtor's center of main interests. There is a statutory presumption that a debtor's "registered office" is its center of main interests "in the absence of evidence to the contrary," see 11 U.S.C. § 1516(c), and the legislative history makes clear that the rule of the "registered office," i.e. "place of incorporation," is "designed to make recognition as simple and expedient as possible" in cases such as this, where the facts are not controversial. H. Rep. No. 109-31, Pt. 1, 109th Cong., 1st Sess. 112-13 (2005). Here, MS Fritz is, and has always been, a registered German partnership, and had offices and managed its business at Boschstr. 15 in

Haren/Ems, Germany. Haren is also the business location of General Partner and Maik, Josef, Traudel and Mark Schöning. See Sontopski Decl. ¶¶ 16, 18.

38. For all of the reasons set forth above, the German Insolvency Proceeding is, and should be recognized as, the foreign main proceeding in respect of MS Fritz.

        (ii)    <u>The Petitioner is a Foreign Representative Who is a Person</u>

39. The second requirement for recognition of a foreign proceeding under section 1517(a) of the Bankruptcy Code is that the foreign representative applying for recognition be a person or body. See 11 U.S.C. § 1517(a)(2).

40. The term "foreign representative" is defined in section 101(24) of the Bankruptcy Code as follows:

> [A] person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

41. Under section 101(41) of the Bankruptcy Code, the "term 'person' includes [an] individual . . . ." 11 U.S.C. § 101(41).

42. The Petitioner in this case is an individual who has been "authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs" pursuant to the Appointment Orders. As such, he satisfies the second requirement for the entry of an order recognizing the German Insolvency Proceeding under section 1517(a) of the Bankruptcy Code.

        (iii)    <u>The Petition Meets the Requirements of Section 1515</u>

43.     The third and final requirement for recognition of a foreign proceeding under section 1517(a) of the Bankruptcy Code is that the petition for recognition meets the procedural requirements of section 1515 of the Bankruptcy Code. See 11 U.S.C. § 1517(a)(3).

44.     Here, all of the requirements of section 1515 of the Bankruptcy Code have been met. First, MS Fritz's chapter 15 case was duly and properly commenced by the Petitioner through the filing of this Petition as required by section 1515(a) of the Bankruptcy Code.

45.     Second, evidence of the existence of the German Insolvency Proceeding and the appointment of the Petitioner as Insolvency Administrator thereof have been provided to the Court as required under section 1515(b)(1) and (d) of the Bankruptcy Code. See Exhibit A to the Sontopski Declaration (true and correct copies of the Appointment Orders).

46.     Third, in accordance with section 1515(c) of the Bankruptcy Code, the Sontopski Declaration contains a statement identifying the German Insolvency Proceeding as the only foreign proceeding currently pending with respect to MS Fritz. See Sontopski Decl. at ¶ 11. That statement is also contained in paragraph 89 of this petition.

47.     For all of the reasons set forth above, the Petitioner respectfully submits that all of the requirements of section 1517(a) have been satisfied and, thus, that the entry of an order recognizing the German Insolvency Proceeding as a foreign main proceeding is proper.

**B.      MS Fritz is Entitled to the Automatic Relief Under 11 U.S.C. § 1520**

48.     Section 1520(a) of the Bankruptcy Code sets forth a series of statutory protections that automatically result from the recognition of a foreign proceeding as a foreign main proceeding, see 11 U.S.C. § 1520(a), including the application of the protection afforded by the automatic stay under section 362(a) of the Bankruptcy Code to MS Fritz and to MS Fritz's property that is located within the territorial jurisdiction of the United States. Given that the protections set forth in section 1520(a) flow automatically from the recognition of a foreign main

16

proceeding under section 1517, the Petitioner respectfully submits that no further showing is required to the extent the Court recognizes the German Insolvency Proceeding as a foreign main proceeding.

**C.    The Discretionary Relief Requested is Necessary and Appropriate to Protect MS Fritz's Assets and Should be Granted**

49.    Upon recognition of a foreign proceeding, section 1521(a) authorizes the Court to grant "any appropriate relief" at the request of the recognized foreign representative "where necessary to effectuate the purpose of [chapter 15] and to protect the assets of the debtor or the interests of the creditors." 11 U.S.C. § 1521(a). Such relief may include the following:[10]

(1)    staying the commencement or continuation of an individual action or proceeding concerning the debtor's assets, rights, obligations or liabilities to the extent they have not been stayed under section 1520(a);

(2)    staying execution against the debtor's assets to the extent it has not been stayed under section 1520(a);

(3)    suspending the right to transfer, encumber or otherwise dispose of any assets of the debtor to the extent this right has not been suspended under section 1520(a) . . . ; and

(7)    granting any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a) . . . .

Id.  The Court may grant relief under section 1521 if the interests of "the creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. § 1522(a).

50.    In granting discretionary relief, the court may also act pursuant to section 1507 to provide "additional assistance" to a foreign representative under the Bankruptcy Code or other U.S. law. 11 U.S.C. § 1507(a). The legislative history to section 1507 states that the section provides authority for "additional relief" beyond that permitted under sections 1519 to 1521.[11] In exercising discretion to grant relief under section 1507, courts will be guided by the standards set forth in section 1507. Section 1507(b) provides that:

---

[10] Under the Bankruptcy Code, the term "including" is not limiting. See 11 U.S.C. § 102(3).
[11] H.R. Rep. No. 109-31, pt. I, 109th Cong., 1st Sess. 109 (2005).

In determining whether to provide additional assistance under this title or under other laws of the United States, the court shall consider whether such additional assistance, consistent with the principles of comity, will reasonably assure—

(1)     just treatment of all holders of claims against or interests in the debtor's property;

(2)     protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;

(3)     prevention of preferential or fraudulent dispositions of property of the debtor;

(4)     distribution of proceeds of the debtor's property substantially in accordance with the order prescribed by this title; and

(5)     if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns.

11 U.S.C. § 1507(b).

51.     Section 1507(b) of the Bankruptcy Code substantially incorporates the provisions of former section 304(c) of the Bankruptcy Code that courts considered in deciding whether to grant relief under former section 304(b) (11 U.S.C. § 304, repealed by Pub.L. No. 109-8, tit. VIII, sec. 802, 119 Stat. 23, 146 (2005) on April 20, 2005, repeal effective October 17, 2005) ("**former section 304**"). Accordingly, courts have considered jurisprudence under former section 304 in applying section 1507 of the Bankruptcy Code. See In re Atlas Shipping A/S, 404 B.R. 726, 738 (Bankr. S.D.N.Y. 2009).

52.     Additionally, section 105(a) of the Bankruptcy Code provides that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

53.     As noted above, the purpose of chapter 15 is to incorporate the Model Law on Cross-Borden Insolvency into the United States bankruptcy law. 11 U.S.C. § 1501.  Chapter 15

is designed "to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of–

> (1) cooperation between—
>
> > (A)     courts of the United States, United States trustees, trustees, examiners, debtors, and debtors in possession; and
> >
> > (B)     the courts and other competent authorities of foreign countries involved in cross-border insolvency cases;
>
> (2) greater legal certainty for trade and investment;
>
> (3) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor;
>
> (4) protection and maximization of the value of the debtor's assets; and
>
> (5) facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

11 U.S.C. § 1501(a). "Consistent with section 1501, the court shall cooperate to the maximum extent possible with a foreign court or a foreign representative, either directly or through the trustee." 11 U.S.C. § 1525(a); see also 11 U.S.C. § 1509(b)(3) (once recognition of a foreign proceeding is granted, "a court in the United States shall grant comity or cooperation to the foreign representative");[12] In re Toft, 453 B.R. 186, 190 (Bankr. S.D.N.Y. 2011) (quoting section 1509).

54.     The Petitioner urges this Court to exercise its discretion under sections 105, 1507 and 1521 to grant the remaining Relief Requested, i.e., the Relief Requested beyond recognition of the German Insolvency Proceeding as a foreign main proceeding (and of the Petitioner's

---

[12] It should be noted that the term "cooperation" appears to be even broader than the term "comity." See Ad Hoc Grp. of Vitro Noteholders v. Vitro SAB de CV (In re Vitro SAB de CV), 701 F.3d 1031, 1047 (5th Cir. 2012 ), cert. denied sub nom. Vitro, S.A.B. de C.V. v. Ad Hoc Group of Vitro Noteholders, 133 S.Ct. 1862 (2013) (Mem) ("Although use of the word 'comity' connotes recognition of another judicial proceeding, the word 'cooperation' suggests a much broader meaning.").

position as "foreign representative" in respect thereof) and the effects of such recognition under section 1520.

(i)     Discretionary Relief Is Appropriate Under Section 1521

55.     The discretionary Relief Requested is consistent with the goals of international cooperation and assistance to foreign courts embodied in chapter 15 of the Bankruptcy Code, and would promote all of the legislatively enumerated objectives of section 1501(a).

56.     The litigation against MS Fritz's sole asset, pending in this District, was brought by Pacific Chartering, the assignee of Intersee and Intership—companies owned and controlled by the same German family who owns and, prior to the German Insolvency Proceedings, controlled MS Fritz.  Upon information and belief, Pacific Chartering also may be related to the assignors and MS Fritz's owners.  Pacific Chartering is owned and operated by Martin Faubion.  Mr. Faubion also serves as a member, director and vice president of Intersee (Houston) LLC, which is the domestic chartering agent for Intersee.  Mr. Faubion operates both Pacific Chartering and Intersee (Houston) out of his home.  As a result of Pacific Chartering's attachment in violation of, and without apprising the District Court of, the Appointment Orders, the M/V Fritz has been, and continues to be, detained and out of commission for weeks in the Toledo port.  See Sontopski Decl. ¶¶ 25-30.

57.     MS Fritz has no other known creditors in the United States.  The discretionary Requested Relief, therefore, is urgent and critical in order to preserve MS Fritz's sole asset from damage and potential execution, enable its turnover to the Petitioner, permit the Petitioner to investigate the nature and validity of all asserted claims and liens, prevent preferential or fraudulent disposition of MS Fritz's property, and ensure the just treatment of all holders of claims or interests in MS Fritz's property.

58.     To the extent the standards for injunctive relief apply in this chapter 15 case to the Relief Requested, those standards are met.  See 11 U.S.C. § 1521(e). Preliminary injunctive relief generally is appropriate where the movant can show (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm in the absence of preliminary relief, (3) that the balance of equities or hardships tips in his favor, and (4) that an injunction is in the public interest.  Winter v. Natural Resources Defence Council, Inc., 555 U.S. 7, 20 (2008).  "These factors are not prerequisites to issuing an injunction but factors to be balanced."  Jones v. Hamilton County Gov't, Tenn., 530 Fed. Appx. 478, 484 (6th Cir. 2013).

59.     The Petitioner is likely to succeed on the merits.  As discussed supra, ¶¶ 27-49, the German Insolvency Proceedings must be recognized under Section 1517(a)  if the proceedings are (1) a foreign main or nonmain proceeding, (2) the foreign representative is a person or a body, and (3) the Petitioner files the documents required by Section 1515 (i) a petition for recognition, (ii) certified copies of the decision commencing the foreign proceeding and appointing the foreign representative and (iii) a statement identifying all foreign proceedings with respect to the debtor that are known to the Petitioner.  The Court can easily determine from the record before it that these requirements have been met.

60.     Irreparable harm to an estate exists where the orderly determination of claims and the fair distribution of assets are disrupted. See Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B., 825 F.2d 709, 713-14 (2d Cir. 1987) ("The equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding; if all creditors could not be bound, a plan of reorganization would fail."); see also In re Garcia Avila, 296 B.R. 95, 114 (Bankr. S.D.N.Y. 2003) ("irreparable harm is present when the failure to enjoin

21

local actions will disrupt the orderly reconciliation of claims and fair distribution of assets in a single, centralized forum" (quoting Collier on Bankruptcy ¶ 304.05, at 304-21 (15th ed. Rev. 2003)); In re MMG LLC, 256 B.R. 544, 555 (Bankr. S.D.N.Y. 2000) ("[I]rreparable harm exists whenever local creditors of the foreign debtor seek to collect their claims or obtain preferred positions to the detriment of other creditors."); In re Rubin, 160 B.R. 269, 283 (Bankr. S.D.N.Y. 1993) ("[T]here seems to be little dispute regarding the notion that the premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury," quoting Lines, infra); In re Petition of Brierley, 145 B.R. 151, 168 (Bankr. S.D.N.Y. 1992) ("Harm to the estate exists from the failure to grant injunctive relief in the form of disruption of an orderly determination of claims and the fair distribution in a single case." (internal quotation marks and citation omitted)); In re Gercke, 122 B.R. 621, 626 (Bankr. D.D.C. 1991) ("Harm to the estate also exists in the form of disruption of an orderly determination of claims and the fair distribution in a single case," citing Victrix); In re Lines, 81 B.R. 267, 270 (Bankr. S.D.N.Y. 1988) ("[T]he premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury.").

61.     Several Courts of Appeals have recognized a federal court's authority to grant permanent injunctive relief to enforce foreign bankruptcy proceedings under former section 304, the predecessor of Chapter 15. See, e.g., In re Rosacometta, S.R.L., 244 Fed. Appx. 286 (11th Cir. 2007) (affirming order turning garnished funds over to Italian bankruptcy trustee and enjoining creditors from enforcing their claims outside of Italian bankruptcy court under former section 304); In re National Warranty Ins. Risk Retention Grp., 384 F.3d 959 (8th Cir. 2004) (affirming injunction requiring parties to seek relief before the Cayman Islands bankruptcy courts under section 304, bankruptcy courts' authority to mold appropriate relief in such

circumstances has "near blank check" status); In re Schimmelpenninck, 183 F.3d 347, 352 (5th Cir. 1999) (finding that the bankruptcy court abused its discretion in not entering an injunction requiring a creditor to seek "that which is available to him" in Dutch bankruptcy proceedings under former section 304 rather than through lawsuits in the United States); In re Manning, 236 B.R. 14, 22 (9th Cir. B.A.P. 1999) (bankruptcy courts have "broad authority to issue an injunction 'to prevent individual American creditors from arrogating to themselves property belonging to the creditors as a group" and to "enable all claims against a foreign debtor to be handled in the same forum"), quoting 2 Collier on Bankruptcy ¶ 304.05.

62.     The balance of the equities and the public interest both tip in favor of the Petitioner.  Section 1501 provides that the explicit purpose of Chapter 15 is to promote cooperation between foreign administrators and American courts to ensure that cross-border insolvencies are resolved in a manner that is fair to all creditors and protects and maximizes the value of the debtor.  Similarly, Section 1507 expresses the policy of the United States to prevent "preferential or fraudulent distributions " of the debtor's property and ensure the "just treatment of all holders of claims" against the debtor's property and distribution of property in line with statutory priorities.

63.     There is no inequity or harm to the public interest in requiring Pacific Chartering to seek a recovery in Germany. Pacific Chartering attached the asset of a German company on the basis of a questionable debt which was subject to German law and mandatory German arbitration.  At the time Pacific Chartering obtained the questionable debt, MS Fritz was already in German Insolvency Proceedings.  Allowing Pacific Chartering to use American law under these circumstances to undermine the German Insolvency Proceedings would be an affront to principles of comity. See Ex. A §11 (setting German law as the applicable law and requiring

disputes to be arbitrated before the German Maritime Arbitration Association); Ex. B ¶ 14 (same); German Maritime Arbitration Association Rules § 8 (unless the parties agree otherwise, arbitration shall occur in Hamburg or Bremen).[13]

64.     In addition, the harm to the Petitioner and the public interest is clear.  There can be no greater threat to the orderly reconciliation of claims than for one creditor with a dubious claim to seize the only operating asset of MS Fritz before the circumstances and propriety of that creditor's claims can be investigated.  The absolute priority rule and the prohibition against preferences are bedrock principles of American bankruptcy law. See 11 U.S.C. §§ 547 (allowing the trustee to avoid preferences), 1129(b) (absolute priority rule).   Indeed, American bankruptcy courts are explicitly encouraged to judge foreign proceedings based upon whether they follow those principles.   Section 1507(b) provides that, in "determining whether to provide additional assistance under this title . . . the court shall consider whether such additional assistance . . . will reasonably assure . . . prevention of preferential . . . dispositions of property of the debtor [and] distribution of proceeds of the debtor's property substantially in accordance with the order proscribed by this title[.]"

65.     If Pacific Chartering is not stopped, it may assert liens or dispose of the M/V Fritz, giving itself full payment and leaving little or nothing for claimants of equal or higher rank under German bankruptcy law.  The cost of a stay is much less dire to Pacific Chartering.  The loss of an unfair advantage over other creditors "is not a valid reason to deny relief to the foreign representative." Atlas Shipping, 404 B.R. at 742.  And so Pacific Chartering would suffer, at worst, a delay in receiving the amount it is owed, if anything.

---

[13] A true and correct copy of the English translation of German Maritime Arbitration Association Rule § 8, published online at http://www.gmaa.de/en/rules/rules-of-arbitration, is attached as **Exhibit C**.

(iii) <u>Granting the Relief Requested Will Leave Creditors and Other Parties in Interest "Sufficiently Protected" and Will Not Be "Manifestly Contrary to the Public Policy of the United States"</u>

66.     The Relief Requested under section 1521 is founded on the Congressional mandate to cooperate with foreign proceedings and foreign representatives to promote the goals of chapter 15. <u>See</u> 11 U.S.C. § 1525(a) ("Consistent with section 1501, the court shall cooperate to the maximum extent possible with a foreign court or a foreign representative, either directly or through the trustee."). As shown above, such relief is "appropriate" as that term is used in section 1521 because it is necessary to ensure the success of the German Insolvency Proceeding.  As noted above, however, the Court may grant such relief only if the interests of "the creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. § 1522(a) (adopting Article 22 of the Model Law).

67.     The Bankruptcy Code does not define "sufficient protection." The legislative history indicates that the prohibition was meant to apply "if it is shown that the foreign proceeding is seriously and unjustifiably injuring United States creditors." H. Rep. No. 109-31, pt. 1, 109th Cong., 1st Sess. 116 (2005). A determination of sufficient protection "requires a balancing of the respective parties' interests." <u>In re AJW Offshore, Ltd.</u>, 488 B.R. 551, 559 (Bankr. E.D.N.Y. 2013) (citing <u>SNP Boat Serv. S.A. v. Hotel Le St. James</u>, 483 B.R. 776, 784 (S.D. Fla. 2012); Guide ¶ 161 ("The idea underlying article 22 is that there should be a balance between relief that may be granted to the foreign representative and the interests of the persons that may be affected by such relief. This balance is essential to achieve the objectives of cross-border insolvency legislation.")[14] Section 1522 "gives the bankruptcy court broad latitude to

---

[14] <u>See also In re Qimonda AG Bankr. Litig.</u>, 433 B.R. 547, 556–58 (E.D. Va. 2010); <u>CT Inv. Mgmt. Co. v. Cozumel Caribe, S.A. de C.V.</u>, 482 B.R. 96, 108 (Bankr. S.D.N.Y. 2012)); <u>Toft</u>, 453 B.R. at 196 n.11; <u>Tri-Cont'l Exch.</u>, 349 B.R. at 637; <u>In re Sivec SRL</u>, 476 B.R. 310, 323 (Bankr. E.D. Okla. 2012) (citing Guide); In re Lee, 472 B.R. 156, 180-81 (Bankr. D. Mass. 2012); In re Int'l Banking Corp., 439 B.R. 614, 626¬27 (Bankr. S.D.N.Y. 2010).

mold relief to meet specific circumstances." Int'l Banking, 439 B.R. at 626-27 (internal

quotations and citations omitted); Atlas Shipping, 404 B.R. at 740; see also In re Artimm, 278

B.R. 832, 837 (Bankr. C.D. Cal. 2002) (Former section 304 "discretion typically points in favor

of granting relief to section 304 petitioners," and "section 304 gives a court wide latitude to mold

appropriate relief so that a foreign insolvency can proceed in a rational fashion with due regard

for all of the varied and competing interests at issue.").

68.     Here, all parties are "sufficiently protected" by the treatment they are entitled to

under the German Insolvency Proceeding.  A German proceeding is not only substantively fair,

but it is what the interest holders in MS Fritz bargained for.

69.     Insolvency Proceedings under the German InsO are analogous to American

proceedings under the Bankruptcy Code.  Section 1 of the InsO  provides that the purpose of

such proceedings is the collective satisfaction of a debtor's creditors by liquidation of the

debtor's assets and by distribution of the proceeds, or by reaching an arrangement in an

insolvency plan, particularly in order to maintain the enterprise. See Sontopski Decl. at ¶ 37.

70.     As discussed above, under the InsO, an insolvency administrator, like the

Petitioner, stands in a position analogous to an American bankruptcy trustee.  Creditors of the

insolvent company are generally barred from executing against the assets of the debtor.  *See*, *e.g.*,

section 89.  Instead, the creditors must file claims with an administrator who is appointed and

supervised by a court, vested with the rights to manage the debtor's assets, bring claims for

generalized harm to the estate, and take control of certain lawsuits related to the debtor.  *See,*

*e.g.*, sections 28, 56, 58, 80, 85, 86, 92, 148 and 174.  The administrator may maximize the value

of the fund he creates by declining to perform executory contracts, terminating leases, and

avoiding transactions that disadvantage creditors.  *See, e.g.*, sections 103, 109, 130-146.  The

26

administrator has a duty to determine the debtor's assets and creditors, and to assist with brokering a plan to rehabilitate the debtor or to liquidate and distribute assets to creditors in order of their priority after negotiations with a creditor's committee. *See, e.g.*, Secs. 152, 153, 187-196.

71.     In addition, a German forum for all of MS Fritz's assets sufficiently protects the creditors and other interested parties because it provides them with the forum they likely bargained for when they made their commercial decisions. No reasonable party would have expected disposition of MS Fritz's assets to be litigated in the United States, as MS Fritz did not have any known American debts or creditors until after it commenced the German Insolvency Proceedings. See Sontopski Decl. at ¶ 40.

72.     MS Fritz chose to commence its bankruptcy proceedings in Germany and is certainly sufficiently protected by the laws it chose.

73.     Similarly, Pacific Chartering chose to acquire debts allegedly owed by one German company to another while the purported debtor was in German bankruptcy proceedings. The debts are governed by German law and subject to mandatory arbitration before the German Maritime Arbitration Association.  Pacific Chartering could not reasonably expect that its agreements would be litigated anywhere but Germany.

74.     Finally, while the other creditors of MS Fritz would reasonably have expected a German forum to resolve their claims against the company, they would have no reason to suspect that MS Fritz's assets would be attacked in an American court, as MS Fritz had no American debts or creditors prior to the German Insolvency Proceedings.

75.     The Relief Requested "would assist in the efficient administration of this cross-border insolvency proceeding, and it would not harm the interests of the debtors or their

27

creditors." In re Grant Forest Prods., Inc., 440 B.R. 616, 621 (Bankr. D. Del. 2010). That certain creditors "may be denied an advantage over the debtor's other . . . creditors is not a valid reason to deny relief to the foreign representative." Atlas Shipping, 404 B.R. at 742.

76.     A court may also deny a request for any chapter 15 relief that would be "manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506. The legislative history indicates that the "public policy" exception is narrow, applying only to the "most fundamental policies of the United States." H. Rep. No. 109-31, pt. 1, 109th Cong., 1st Sess. 109 (2005); see also Vitro, 701 F.3d at 1069; Sino-Forest, 501 B.R. at 665 (quoting Vitro); Oilsands Quest, 484 B.R. at 597. One court has determined, for example, that the lack of an opportunity for a jury trial is not manifestly contrary to U.S. public policy. See In re Ephedra Prod. Liab. Litig., 349 B.R. 333, 335-36 (S.D.N.Y. 2006).

77.     Accordingly, it is not necessary that the result achieved in the German Insolvency Proceeding be identical to that which would be had in the United States. It is sufficient if the result is "comparable" or "similar." Vitro, 701 F.3d at 1044 (citing cases); Sino-Forest, 501 B.R. at 665 (quoting Metcalfe); Metcalfe, 421 B.R. at 697. Furthermore, the mere fact that a foreign representative requests relief that would be available under the law of the foreign proceeding, but not in the United States, is not alone grounds for denying comity. See In re Condor Ltd., 601 F.3d 319, 327 (5th Cir. 2010).

(iv)     Granting the Relief Requested Meets the Traditional Standards of "Comity" Under Section 1507(b)

78.     While satisfaction of the standards set forth in sections 1521 and 1522 would appear to be sufficient to grant the discretionary portions of Relief Requested, to the extent the Court holds that section 1507(a) is a necessary predicate to granting such relief, the Petitioner

28

submits that granting the Relief Requested meets the standards of comity set forth under section 1507(b) of the Bankruptcy Code.

79. The first factor under section 1507(b) is whether the additional assistance contemplated will reasonably assure "just treatment of all holders of claims against or interests in the debtor's property." Under former section 304(c) jurisprudence, courts uniformly held that this requirement is satisfied where the foreign insolvency law provides a comprehensive procedure for the orderly resolution of claims and the equitable distribution of assets among all of the estate's creditors in one proceeding. See, e.g., The Bank of New York v. Treco (In re Treco), 240 F.3d 148, 158 (2d Cir. 2001); In re Culmer, 25 B.R. 621, 629 (Bankr. S.D.N.Y. 1992). As set forth above, German insolvency law, which governs the German Insolvency Proceeding, provides for all creditors to receive distributions in order of priority within their respective class, and each creditor has equal rights of participation in the German Insolvency Proceeding.

80. The second enumerated factor, "protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding," 11 U.S.C. § 1507(b)(2), is satisfied where creditors are given adequate notice of timing and procedures for filing claims, and such procedure does not create any additional burdens for a foreign creditor to file a claim. See, e.g., Treco, 240 F.3d at 158; In re Petition of Hourani, 180 B.R. 58, 68 (Bankr. S.D.N.Y. 1995). MS Fritz has no known creditors in the United States other than Pacific Chartering, the assignee of MS Fritz's insiders who commenced litigation in this District to attach MS Fritz's sole asset. See Sontopski Decl. at ¶ 40. Pacific Chartering was provided notice of the Petition, including copies of the Sontopski Declaration, which has attached the Appointment Orders regarding claims procedures in the German Insolvency

29

Proceeding. Furthermore, in compliance with German law, Petitioner provided the requisite publication notice of the June 26 Appointment Order, including publishing the June 26 Appointment Order on www.insolvenzbekanntmachunger.de, which operates as constructive notice of the German Insolvency Proceeding to all creditors as a matter of law under InsO § 9 Sections 1 and 3. See Sontopski Decl. at ¶ 38.

81.     Pacific Chartering also is identified as a creditor in the German Insolvency Proceeding. Pacific Chartering was given notice of the August 13 Appointment Orders by mail sent on August 14, 2014, and will continue to receive notices given to creditors. German and non-German creditors are treated equally. See Sontopski Decl. at ¶ 39.

82.     Section 1507(b)(3) requires that the "additional assistance" being considered will reasonably assure prevention of preferential or fraudulent dispositions of property of MS Fritz. This consideration is paramount here, where this Chapter 15 filing was prompted by the acts of a single creditor to attach and dispose of MS Fritz's sole asset, during the pendency of the German Insolvency Proceeding and in derogation of the prohibition contained in the Appointment Orders, to the detriment of similarly situated (or higher priority) creditors.

83.     Section 1507(b)(4) requires that the distribution of MS Fritz's property substantially accords with the order of distribution available under the Bankruptcy Code. See, e.g., In re Gee, 53 B.R. at 904; see also Haarhuis v. Kunnan Enters., Ltd., 177 F.3d 1007 (D.C. Cir. 1999) (Taiwanese distribution system was substantially in accordance with U.S. law because priority afforded to certain classes of claims as under the Bankruptcy Code). Simply put, that section merely requires that the "foreign distribution scheme be 'substantially in accordance' with United States bankruptcy law; it does not have to mirror the United States distribution rules." In re Ionica, 241 B.R. 829, 836 (Bankr. S.D.N.Y. 1999) (citations omitted).

"Consequently, this factor does not preclude deference merely because the foreign distribution scheme subordinates or accords a lower priority to the U.S. creditor's claim. Rather, the distribution scheme must not be repugnant to a fundamental principle of American law, or render the claim unenforceable." Id. (internal citations omitted). Priority both in right of payment and in distribution of proceeds of enforcement of security interests in MS Fritz's property is respected under German law in substantially the same way it is respected under the Bankruptcy Code.

84.     Section 1507 of the Bankruptcy Code requires that any determination of a request for assistance under chapter 15 be "consistent with principles of comity . . . ." 11 U.S.C. § 1507. As the House Judiciary Committee noted in its report, "comity is raised to the introductory language to make clear that it is the central concept to be addressed." H. Rep. at 109, U.S. Code Cong. & Admin. News 2005, 88, 172; see also 11 U.S.C. § 1509(b)(3) (once recognition of a foreign proceeding is granted, the court in the United States shall grant comity or cooperation to the foreign representative); Toft, 453 B.R. at 190 (quoting section 1509(b)(3)); Altas Shipping, 404 B.R. at 733 (granting comity to orders in Danish proceeding).

85.     Principles of comity support the grant of the relief requested herein. Federal courts generally extend comity "whenever the foreign court had proper jurisdiction and enforcement does not prejudice the rights of United States citizens or violate domestic public policy." See Victrix, 825 F.2d at 713 (citing Hilton v. Guyot, 159 U.S. 113, 202-03, 16 S. Ct. 139, 40 L. Ed. 95 (1895)); see also Cunard S.S. Co. Ltd. v. Salen Reefer Svs. AB, 773 F.2d 452, 456-57 (2d Cir. 1985); Atlas Shipping, 404 B.R. at 733. As noted above, particularly in the bankruptcy context, "American courts have long recognized the need to extend comity to foreign bankruptcy proceedings," because "[t]he equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding; if all creditors

31

could not be bound, a plan of reorganization would fail." Victrix, 825 F.2d at 713-14. Other courts have similarly underscored the importance of extending comity to foreign bankruptcy proceedings. See Finanz AG Zurich v. Banco Economico S.A., 192 F.3d 240, 246 (2d. Cir. 1999); Maxwell Commc'ns Corp. v. Societe Generale (In re Maxwell Commc'ns Corp.), 93 F.3d 1036, 1048 (2d Cir. 1996); Cunard, 773 F.2d at 458; Oui Fin., 2013 WL 5568732, at * 5 (comity under New York law should normally be extended to foreign restructuring proceedings if the foreign court is of competent jurisdiction, and the proceedings are procedurally fair and do not contravene public policy). Indeed, comity should be withheld only when the recognition of foreign proceedings would be adverse to the public policy interests of the United States. See Somportex, Ltd. v. Philadelphia Chewing Gum Corp., 453 F.2d 435, 440 (3rd Cir. 1971); Cunard, 773 F.2d at 457 (citing Somportex); see also Sino-Forest, 501 B.R. at 662 ("[D]eference to the foreign court is appropriate so long as the foreign proceedings are procedurally fair and do not contravene the laws or public policy of the United States . . . ." (quoting JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A., 412 F.3d 418, 424 (2d Cir. 2005) (internal quotation punctuation omitted))). American courts have consistently recognized the interests of foreign countries in winding up the affairs of their own businesses. See Cunard, 773 F.2d at 458 (and cases cited therein); In re Gee, 53 B.R. at 901 ("Particularly where the foreign proceeding is in a sister common law jurisdiction with procedures akin to our own, exceptions to the doctrine of comity are narrowly construed.") (citing Clarkson Co. v. Shaheen, 544 F.2d 624, 630 (2d Cir. 1976)). As discussed above, because the German Court has proper jurisdiction and the German insolvency law is (i) substantially similar to U.S. bankruptcy law, (ii) not contrary or prejudicial to the interests of creditors in the United States, and (iii) does not violate any domestic public policy,  the doctrine of comity supports the granting of permanent relief enforcing the German

32

Insolvency Proceeding and German insolvency law under both section 1507 and section 1521 of the Bankruptcy Code in this case.

86.    Accordingly, the Requested Relief should be granted.

## V.    NOTICE

87.    Notice of the Chapter 15 petition shall be provided in accordance with the Court's Order (I) Approving Form and Manner of Service of Notice of Filing of Petition for Recognition and Other Pleadings Pursuant to Chapter 15 of the Bankruptcy Code, and (II) Scheduling a Hearing on Chapter 15 Petition for Recognition being submitted simultaneously herewith.

## VI.    NO PRIOR RELIEF REQUESTED

88.    Except as requested or stated herein, no other relief has been requested from this or any other court.

## VII.    STATEMENTS REQUIRED BY STATUTE OR RULE

89.    The only foreign proceedings with respect to MS Fritz of which the Petitioner is aware is the German Insolvency Proceeding. 11 U.S.C. § 1515(c); Fed. R. Bankr. Pro. 1004.2(a). The Petitioner is authorized to administer the German Insolvency Proceeding. He may be reached through the undersigned counsel, whose address is 1900 E. 9th St., Ste. 3200, Cleveland, Ohio 44147. The Petitioner's address is Andreas Sontopski, Gnoiener Platz 10, D-48493 Wettringen, Germany. No other parties are authorized to administer the German Insolvency Proceeding. Fed. R. Bankr. Pro. 1007(a)(4)(B).

90.    The only known party to litigation pending in the United States in which MS Fritz is a party at this time is Pacific Chartering. Pacific Chartering's counsel, to the best of the Petitioner's knowledge, is Alan Van Praag at Eaton & Van Winkle LLP, 3 Park Avenue, 16th

Floor, New York, New York, 10016. Pacific Chartering's website provides that its "legal address" is 1115 Crossroads, Houston, Texas, 77079. Fed. R. Bankr. Pro. 1007(a)(4)(B).

91.     MS Fritz's Center of Main Interests is in Germany. Fed. R. Bankr. Pro. 1004.2(a).

92.     The Petitioner is an individual, and so is not required to file a corporate ownership statement. Fed. R. Bankr. Pro. 1007(a)(4)(A), 7007.1.

WHEREFORE, for the reasons set forth above, the Petitioner respectfully requests that the Court enter an order, substantially in the form attached hereto as Exhibit D, and grant the Petitioner such other relief as the Court deems just and proper.

Respectfully submitted,

/s/ Kelly S. Burgan
Thomas R. Lucchesi (0025790)
James Slater (0074524)
Kelly S. Burgan (0073649)
Joseph M. Esmont (0084322)
BAKER & HOSTETLER LLP
PNC Center
1900 East 9th Street, Suite 3200
Cleveland, Ohio 44114-3482
Telephone: 216.621.0200
Facsimile: 216.696.0740
tlucchesi@bakerlaw.com
jslater@bakerlaw.com
kburgan@bakerlaw.com
jesmont@bakerlaw.com

*Counsel for Foreign Representative Andreas Sontopski, in his capacity as the Insolvency Administrator*

## VERIFICATION

ANDREAS SONTOPSKI hereby declares:

1. I have been appointed Insolvency Administrator for the insolvency estate of MS "Fritz" Schiffahrtsges mbH & Co. Reederei KG by the Meppen District Insolvency Court in Germany, in Case File No. 9 IN 116/14. In that capacity, I am authorized to commence this Chapter 15 proceeding and act in this ancillary case.

2. I have read, with translation assistance from Dr. Gregor Reiter, my counsel, this verification and the foregoing *Foreign Representatives' Verified Petition Under Chapter 15 For Recognition of Foreign Main Proceeding and Motion for Related Relief*, and am informed and believe that the factual allegations contained therein are true and correct.

3. I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed: _Wettringen_, Germany

August _28_, 2014

Insolvenzverwalter
Rechtsanwalt Andreas Sontopski
Postfach 11 60 · 0 25 57 / 93 84-0
48489 Wettringen

/s/ _____
ANDREAS SONTOPSKI